AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Middle District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| JOSE VARGES MARTIN, JOSE ARTIAGA HAMA, JESUS MARTINEZ SOTO, CARLOS FRANCO PICO, KLEBER ROBLERO MACIAS, and JASIEL TORRES AYALA | ) ) ) ) | Case No. 8:19-MJ-1218-T-AAS |
| | ) | |
| _Defendant(s)_ | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___February 19, 2019___ in the county of ___Hillsborough___ in the
___Middle___ District of ___Florida___, the defendant(s) violated:

| _Code Section_ | _Offense Description_ |
|---|---|
| 46 U.S.C. §§ 70503(a) and 70506 (a) and (b) | Conspiracy with intent to distribute five (5) kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, and possession with intent to distribute five (5) kilograms or more of cocaine, while on board a vessel subject to the jurisdiction of the United States. |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

_____ SA CGIS
_Complainant's signature_

David M. Tomcsik, Special Agent, CGIS
_Printed name and title_

Sworn to before me and signed in my presence.

Date: __March 1, 2019__

_____
_Judge's signature_

City and state: ___Tampa, Florida___

Amanda A. Sansone, U.S. Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, David M. Tomcsik, being duly sworn, depose and state:

### Introduction and Agent Background

1.      I am a Special Agent with the United States Coast Guard Investigative Service ("CGIS"), and have been employed by the U.S. Coast Guard since 1998.  Since August of 2016, I have been assigned as a Special Agent to the Operation Panama Express Strike Force.  Operation Panama Express is a federal Organized Crime Drug Enforcement Task Force ("OCDETF") investigation being conducted by the Federal Bureau of Investigation ("FBI"), Drug Enforcement Administration ("DEA"), Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), the Coast Guard Investigative Service ("CGIS"), the United States Coast Guard ("USCG"), and state and local law enforcement agencies.  Investigations initiated by Operation Panama Express are prosecuted in the Middle District of Florida (Tampa Division).  Special Agents assigned to Operation Panama Express currently investigate cocaine smuggling organizations that are responsible for the transportation of cocaine through international waters of the Caribbean Sea and Pacific Ocean via maritime vessels to transshipment locations for later introduction and distribution into the United States.

## **Statutory Authority**

2. I submit this affidavit in support of a criminal complaint charging that beginning on an unknown date, and continuing through on or about February 19, 2019, while on board a vessel subject to the jurisdiction of the United States, the defendants, JOSE CESAR VARGES-MARTIN, JOSE LUIS ARTIAGA-HAMA, JESUS MARTINEZ-SOTO, CARLOS EDUARDO FRANCO-PICO, KLEBER OSBALDO ROBLERO-MACIAS, and JASIEL OMAR TORRES-AYALA, each of whom will be brought into the United States at a point in the Middle District of Florida, did knowingly and willfully combine, conspire, and agree with each other and with other persons, to distribute and possess with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of 46 U.S.C. §§ 70503(a) and 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii).

3. The averments contained in this Affidavit are based on my personal knowledge and/or reliable information related to me by other law enforcement officers with whom I have worked on this investigation. Because of the limited purpose of this Affidavit, however, I have not included each and every fact known to me or other law enforcement agents concerning this investigation. I have included only those facts I believe are necessary to establish probable cause supporting the requested complaint.

**Probable Cause**

4.   The United States Coast Guard ("USCG") has authority under 14 U.S.C. § 89 to make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, in order to enforce United States law.

5.   On February 19, 2019, a maritime patrol aircraft visually detected a go fast vessel ("GFV") in international waters of the Eastern Pacific Ocean, approximately 310 nautical miles southwest of Acapulco, Mexico. The GFV was traveling north. The maritime patrol aircraft reported suspected contraband on the deck of the GFV, and the suspected contraband was partially visible and partially covered by a tarp. USCG Cutter STEADFAST ("STEADFAST") was diverted to intercept the GFV.

6.   STEADFAST launched a small boat, otherwise known as an over the horizon vessel (OTH), in order to interdict the GFV, and conduct a right of visitation questioning.   The GFV appeared to have detected the OTH and/or the maritime patrol aircraft and went dead in the water.

7.   The USCG OTH approached the GFV, and as it was coming alongside the GFV, the operator of the GFV tried to take off at a high rate of speed.

8.   The GFV aggressively attempted to ram the USCG OTH, while USCG personnel were on board the OTH. Due to the GFV's actions, the USCG

3

OTH was forced to used disabling fire, to stop the fleeing GFV. The USCG subsequently gained control of the GFV.

9.      The boarding team of the USCG OTH conducted a right of approach. No one on the GFV claimed to be the master of the GFV, and no nationality was claimed for the GFV.

10.     While waiting for approval to conduct a full law enforcement boarding and approval to treat the suspect GFV without nationality and therefore subject to the laws of the United States, one of the six mariners from the GFV leaned over the fuel cans and lit a lighter over an open container of fuel causing a fire to break out. This same mariner clung to the gunwale of the GFV and continued to try to ignite more fuel barrels on fire.

11.     The USCG boarding team attempted to extinguish the fire with a fire extinguisher from the USCG OTH, but all attempts failed and the fire spread quickly due to the amount of fuel onboard the GFV. The fire was out of control within one minute, and engulfed the entire GFV. The six crewmen of the GFV jumped into the ocean, and the USCG boarding team got into the USCG OTH. All six of the crewmen from the GFV were retrieved from the ocean by the USCG OTH.

12.     The STEADFAST arrived on scene, and after about 90 minutes, the USCG successfully extinguished the fire.

13.     When the fire was completely extinguished and the remains of the GFV had sufficiently cooled, the USCG OTH approached the GFV remains.

14.     The majority of the GFV was burned to the waterline, but the hull contained several hundred burned, wet, and contaminated kilograms of contraband.  The STEADFAST assessed the seaworthiness of the remains of the GFV, and was able to recover two full kilogram packages to preserve potential evidence.  The remainder of the contraband was unsalvageable.

15.     Two NIK tests were completed and yielded positive results for cocaine.  The USCG boarding team estimates more than 100 bales of cocaine burned on the GFV.

16.     In my training and experience, the GFV is consistent in style, size, and propulsion to other such vessels frequently used to transport cocaine across international waters in the Eastern Pacific Ocean.

17.     The USCG sank the GFV as a navigation hazard and detained the six defendants, who will be brought into the United States in the Middle District of Florida.

18.     Since there was no indicia of nationality from the GFV or from the crewmembers, the USGC determined that the vessel was without nationality, and thus subject to the jurisdiction of the United States.

## CONCLUSION

19.     Based upon the foregoing information, I respectfully submit that

probable cause exists to believe that the following six defendants named herein,

JOSE CESAR VARGES MARTIN, JOSE LUIS ARTIAGA HAMA, JESUS

MARTINEZ SOTO, CARLOS EDUARDO FRANCO PICO, KLEBER

OSBALDO ROBLERO MACIAS, and JASIEL OMAR TORRES AYALA,

while on board a vessel subject to the jurisdiction of the United States, knowingly

and willfully combined, conspired, and agreed with each other, and with other

persons to distribute and possess with the intent to distribute five kilograms or

more of a mixture and substance containing a detectable amount of cocaine, a

Schedule II controlled substance, in violation of 46 U.S.C. §§ 70503(a) and

70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii).

David M. Tomcsik
Special Agent, CGIS

Sworn to before me in Tampa, Florida
this ___1st___ day of ~~February,~~ 2019.
March

THE HONORABLE AMANDA A. SANSONE
United States Magistrate Judge

6